UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NELSON MEDINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) Civil Case No. 24-2401 (RJL) | |
| v. ) | |
| ) | |
| NATIONAL LABOR RELATIONS ) | |
| BOARD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
July 17, 2025 [Dkt. #20; Dkt. #24]

This case challenges the constitutionality of the removal protections enjoyed by National Labor Relations Board ("NLRB" or the "Board") Administrative Law Judges ("ALJs"). Plaintiff Nelson Medina ("plaintiff" or "Medina") filed unfair labor practice charges with the NLRB and expects to have a hearing before an NLRB ALJ to adjudicate those claims. Before a hearing could proceed, however, plaintiff filed suit against the NLRB, its members, and an unnamed NLRB ALJ (together, "defendants"), alleging that NLRB ALJs' multi-layered removal protections "violate the constitution's separation of powers" and "prevent[] the exercise of Presidential authority over NLRB ALJs in violation of Article II." Am. Compl. [Dkt. #18] ¶¶ 54–55. Plaintiff fears that without relief from this Court, he "will have to have his [unfair labor] case heard by an unconstitutionally

1

unaccountable ALJ." *Id.* ¶ 59. He therefore seeks "a declaration that the ALJ's removal protections are unconstitutional." *Id.* at 3, 14–15.

Now before the Court are the parties' dispositive motions—defendants' motion to dismiss and plaintiff's motion for summary judgment. *See generally* Pl.'s Mot. for Summ. J. ("Pl.'s MSJ Mot.") [Dkt. #20]; Pl.'s Mem. of P. & A. in Supp. of MSJ Mot. ("Pl.'s MSJ Mem.") [Dkt. #20-1]; Defs.' Combined Rule 12 Mot. to Dismiss and Opp'n to Pl.'s MSJ Mot. ("Defs.' MTD") [Dkt. #24]. For the reasons set forth below, I will **GRANT** defendants' motion to dismiss and **DENY AS MOOT** plaintiff's motion for summary judgment.

I.   **BACKGROUND**

   A.   Statutory and Regulatory Background

The National Labor Relations Act ("NLRA") established the NLRB. 29 U.S.C. § 151 *et seq.* The NLRB consists of no more than five Board members appointed by the President, with the advice and consent of the Senate, to five-year terms. *Id.* § 153(a). Board members "may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*

The NLRB appoints ALJs, who adjudicate hearings in unfair labor practice cases. *See id.* § 154; 29 C.F.R. §§ 101.10, 102.34. ALJs may be removed "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). Members of the MSPB, in turn, "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).

While adjudicating hearings, NLRB ALJs have the authority to administer oaths, grant applications for subpoenas, receive evidence, take or cause depositions to be taken, hold settlement conferences, dispose of procedural motions, approve stipulations, and make and file decisions. 29 C.F.R. §§ 102.35(a)(1)–(13), 102.45. At the conclusion of a hearing, the ALJ issues "a proposed report, together with a recommended order, which shall be filed with the Board." 29 U.S.C. § 160(c); *see also* 29 C.F.R. § 102.45(a). "[I]f no exceptions are filed within twenty days[,] . . . such recommender order shall become the order of the Board." 29 U.S.C. § 160(c). "Any person aggrieved by a final order of the Board . . . may obtain a review of such order in any United States court of appeals . . . ." *Id.* § 160(f).

  B. <u>Factual and Procedural Background</u>

Plaintiff is employed by Savage Services Corporation in Wilmington, California. Am. Compl. ¶ 19. In December 2023, he filed a charge with NLRB Region 21 alleging that a union "violated the [NLRA] when it threatened [him] with a fine and termination for failing to pay dues and fees without giving him the procedural protections required by the Board." *Id.* ¶¶ 5–6, 20. In February 2024, NLRB Region 21 issued a complaint and notice of hearing to the union and scheduled a hearing before an ALJ for October 16, 2024. *Id.* ¶¶ 6–7.

Plaintiff believes that NLRB ALJs, including the one before which he was set to appear, are unconstitutionally protected from removal, and thus he filed suit in this Court in August 2024. *See generally* Compl. [Dkt. #1]. Along with his Complaint, he also filed a motion for a preliminary injunction. *See generally* Pl.'s Mot. for a Prelim. Inj. [Dkt. #8].

However, before the Court could rule on the preliminary injunction, plaintiff filed additional charges against the union, which caused the NLRB to suspend plaintiff's scheduled hearing pending investigation of the new charges. Am. Compl. ¶ 7. Plaintiff withdrew his motion for a preliminary injunction and the parties asked the Court to set a schedule for filing amended pleadings and dispositive motions. *See* Pl.'s Unopposed Mot. to Withdraw Prelim. Inj. Mot. and Joint Mot. to Set a Briefing Schedule [Dkt. #17]. The Court entered the parties' requested schedule. Min. Order (Sept. 12, 2024).

Plaintiff filed his Amended Complaint on September 13, 2024. *See generally* Am. Compl. He alleges that NLRB ALJs are unconstitutionally shielded from removal by multiple layers of removal protections. *Id.* ¶¶ 49–62 (Count I). The Amended Complaint asks the Court to declare the removal restrictions unconstitutional and, to the extent the NLRB reschedules his hearing before an ALJ, preliminarily enjoin defendants from conducting that hearing. *See id.* at 14–15; Pl.'s Status Report [Dkt. #19].

Plaintiff filed a motion for summary judgment in September 2024. *See generally* Pl.'s MSJ Mot. In response, defendants filed both an opposition to summary judgment and a separate motion to dismiss. *See generally* Defs.' MTD. The parties fully briefed the motions. *See generally* Pl.'s Combined Opp'n to Defs.' Mot. to Dismiss and Reply to its Opp'n to Summ J. ("Pl.'s Reply") [Dkt. #26]; Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply") [Dkt. #27].

Defendants initially sought dismissal on multiple grounds, including an argument that the removal protections are constitutional. *See* Defs.' MTD at 26–30. However, in March 2025, defendants notified the Court that they "no longer rely[] on [their] previous

4

argument that the multiple layers of removal restrictions for ALJs . . . comport with the separation of powers and Article II of the United States Constitution." Defs.' Notice of Modified Position ("Defs.' Notice") [Dkt. #30] at 1. Defendants maintain their other arguments supporting dismissal of the case, including lack of subject-matter jurisdiction and plaintiff's failure to show harm. *See id.* At the Court's request, plaintiff responded to defendants' notice of their changed position. *See* Pl.'s Resp. to Notice of Modified Position ("Pl.'s Resp. to Notice") [Dkt. #31].[1]

## II. LEGAL STANDARD

### A. Motion to Dismiss

"Federal courts are courts of limited jurisdiction," and "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) thus permits defendants to move to dismiss cases for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is plaintiff's burden to establish the Court's jurisdiction, *see Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59, 62 (D.D.C. 2009), and "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action," *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)).

---

[1] Defendants cite to a letter from then-Acting Solicitor General Sarah Harris, which states "that the Department of Justice has concluded that the multiple layers of removal restrictions for administrative law judges (ALJs) in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution, that the Department will no longer defend them in court, and that the Department has taken that position in ongoing litigation." Defs.' Notice Ex. 1, Letter from Acting Solicitor General Sarah Harris [Dkt. #30-1].

Rule 12(b)(6), on the other hand, tests whether a complaint plausibly pleads a viable cause of action. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B. Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

III. ANALYSIS

Defendants have abandoned their argument that the NLRB ALJs' removal protections are constitutional. *See* Defs.' Notice. They nevertheless urge the Court to dismiss plaintiff's case for two reasons. First, defendants argue that the Court lacks subject-matter jurisdiction, as Congress has created a statutory review scheme which requires this case to proceed through the NLRB and then to a court of appeals. Second, defendants assert that plaintiff has failed to show the requisite harm stemming from the

6

removal protections. Addressing each in turn, I agree with defendants on the latter point and will therefore grant their motion to dismiss.[2]

A.   Subject-Matter Jurisdiction

Defendants contend that the Court lacks subject-matter jurisdiction because Congress has created a statutory review scheme which channels all unfair labor practice cases through the NLRB and the courts of appeals. Defs.' MTD at 11–17. While defendants are correct that such a review scheme exists and precludes district courts from hearing the merits of unfair labor practice charges, it does not bar this Court from hearing constitutional challenges to the structure of the NLRB.

The NLRB has exclusive jurisdiction to adjudicate unfair labor practices cases. *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 815 F.3d 834, 839 (D.C. Cir. 2016) ("The United States Supreme Court has held that the NLRB's jurisdiction is in general exclusive; that is, if a claim falls within the purview of the NLRB, state and federal courts are preempted from hearing it." (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959))). Once the NLRB issues a final order, "[a]ny person aggrieved by" that final order "may obtain a review of such order in any United States court of appeals wherein the unfair labor practice in

---

[2] Although constitutionality is no longer a contested issue, defendants maintain their two other arguments for dismissing the case. *See* Defs.' Notice ("The NLRB maintains its positions with respect to its remaining arguments."); Pl.'s Resp. to Notice at 2. The parties seek different outcomes—plaintiff wants declaratory relief and defendants want dismissal—and thus they remain adverse. Accordingly, this case is not moot. *See KNOW v. SEIU, Local 1000*, 567 U.S. 298, 307–08 (2012) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (quoting *Ellis v. Railway Clerks*, 466 U.S. 435 442 (1984))); *United States v. Windsor*, 570 U.S. 744, 757 (2013) (finding that even when the Government conceded a statute was unconstitutional, the Government "retain[ed] a stake sufficient to support Article III jurisdiction" because the parties disputed the relief sought).

question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia." 29 U.S.C. § 160(f).

According to defendants, this review scheme precludes this Court from hearing plaintiff's case. Defs.' MTD at 11. Defendants maintain that this is true even though plaintiff raises constitutional issues, as a court of appeals can eventually rule on the constitutional challenge once the case makes its way through the NLRB. *Id.* at 11–12 (citing *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015)).

*Axon Enterprises v. FTC*, 598 U.S. 175 (2023) provides the relevant jurisdictional test. In *Axon*, a highly analogous case, the Supreme Court considered whether a statutory review scheme precluded the district court from hearing claims that FTC ALJs "are insufficiently accountable to the President, in violation of separation-of-powers principles." *See generally id.* FTC administrative proceedings typically occur before ALJs, who can resolve motions, hold hearings, and issue decisions. *Id.* at 181. A party aggrieved by an ALJ's ruling may appeal to the Commission, or the Commission may review the ruling on its own initiative. *Id.* The Commission, after completing its review, enters a final decision; if the Commission did not review the decision, the ALJ's ruling itself becomes the final Commission decision. *Id.* That final decision can then be reviewed by a court of appeals, but not by a district court. *Id.* This statutory review scheme is similar to the one Congress mandates for NLRA claims. *See supra* Section I.A.

In *Axon*, the Supreme Court acknowledged that a statutory review scheme *can* "preclude district courts from exercising jurisdiction over challenges to federal agency

8

action." *Id.* at 185 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)). However, "a statutory review scheme of that kind does not necessarily extend to every claim concerning agency action." *Id.* Whether the review scheme precludes a district court's jurisdiction depends on "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure.'" *Id.* at 185–86 (quoting *Thunder Basin*, 510 U.S. at 208).

Here the Supreme Court identified three considerations, known as the *Thunder Basin* factors: (1) whether precluding district court jurisdiction forecloses all meaningful judicial review of the claim; (2) whether the claim at issue is wholly collateral to the statutory review scheme's provisions; and (3) whether the claim is outside the agency's expertise. *Id.* at 186. A plaintiff need *not* prove that all three considerations support the district court's jurisdiction. *See id.* ("When the answer to all three questions is yes, 'we presume that Congress does not intend to limit jurisdiction.' But the same conclusion might follow if the factors point in different directions." (internal citation omitted)). All three *Thunder Basin* factors here, however, support this Court's jurisdiction over plaintiff's constitutional claim.

*First*, precluding jurisdiction forecloses all meaningful review. Requiring plaintiff to proceed through the NLRB before reaching a court of appeals would force him to appear before the ALJ he asserts is unconstitutionally protected. By the time his case gets through the NLRB, the alleged harm will have already occurred and will be "impossible to remedy." *See id.* at 191. As in *Axon*, plaintiff's claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker," and once that proceeding happens it

"cannot be undone" and judicial review of his "structural constitutional claim[] would come too late to be meaningful." *See id.*

*Second*, plaintiff's constitutional claim is collateral to the statutory review scheme. Plaintiff is "challenging the [NLRB's] power to proceed at all, rather than actions taken in the agency proceedings." *See id.* at 192. Plaintiff's claim before this Court is not related to the subject of his NLRB case—unfair labor practices—nor does it "address the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *See id.* at 193. Accordingly, under the second *Thunder Basin* factor, plaintiff's constitutional claim is "collateral" to the statutory review scheme. *See id.* at 192–93.

*Third*, plaintiff's claim is outside the NLRB's expertise. Plaintiff's "constitutional challenge" is "distant from the [NLRB's] 'competence and expertise.'" *See id.* at 194 (quoting *Free Enter. Fund v. PCOAB*, 561 U.S. 477, 491 (2010)). As the Supreme Court has observed, "agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise." *Carr v. Saul*, 593 U.S. 83, 92 (2021) (collecting cases). Defendants have not pointed to any reason why the Court should find otherwise with respect to the NLRB. As such, this factor also supports this Court's jurisdiction.

Defendants argue that *Axon* is inapplicable because in *Axon* the party bringing constitutional challenges was forced to appear before an FTC ALJ involuntarily. *See* Defs.' MTD at 12–17. According to defendants, "*Axon*'s extension of extraordinary, non-statutory review makes sense for plaintiff-challengers who have been subjected to administrative proceedings against their will," but "[t]here is no convincing reason to

10

stretch the boundaries of the non-statutory review permitted under *Axon* to cover parties who have initiated administrative proceeds voluntarily[.]" *Id.* at 14. Defendants' point is well taken, but ultimately unpersuasive.

Our Circuit has not resolved the question of whether *Axon*'s reasoning applies to cases in which a plaintiff has affirmatively brought claims before the agency whose structure he wishes to challenge. *See Jolley v. United States*, 2024 U.S. App. LEXIS 8578, at *11 (D.C. Cir. Apr. 9, 2024) ("We [] do not address whether *Axon*'s holding is limited to enforcement actions or whether petitioners bringing affirmative claims may bypass an administrative review scheme."). I see no reason to adopt defendants' proposed distinction, especially where, as here, plaintiff has no alternative venue for redressing the alleged labor violations.

Whether plaintiff is the charging party in the NLRB proceeding is immaterial. The relevant question is whether the claim at issue is "of the type Congress intended to be reviewed within this statutory structure," regardless of who brought the claim. *See Axon*, 598 U.S. at 185–86 (quoting *Thunder Basin*, 510 U.S. at 208, 212). As plaintiff queries: "Why would Congress intend the same claim, with the same remedy, to proceed through two completely different fora, depending on the identity of the litigant or his role in the administrative proceeding?" Pl.'s Reply at 4.

Defendants' response—that plaintiff "urged the NLRB to initiate enforcement proceedings for his benefit and of his own volition"—is unavailing. *See* Defs.' MTD at 14. The NLRB's jurisdiction is exclusive, *see Liberty Mar. Corp.*, 815 F.3d at 839, so if plaintiff seeks to vindicate the allegedly unfair labor practices taken against him, his only

11

option is to proceed before the NLRB. It would be unfair to treat plaintiff as if he cherry-picked among a choice of venues and then complained about the structure of that venue. Instead, fairness dictates that if it can be avoided, plaintiff should not have to choose between redressing his injury in an unconstitutional forum and not redressing his injury at all. *See Avila v. NLRB*, 2025 U.S. Dist. LEXIS 50507, at *16 (D.D.C. Mar. 19, 2025) (Contreras, J.) ("The Court finds no authority for the notion that a plaintiff has a diminished interest in constitutionally sound proceedings simply because he could have declined to seek a remedy for his injury, and the NLRB cites none."). There is no indication that Congress intended to create such a false choice for aggrieved parties when it implemented the NLRB's review scheme.

I therefore find that plaintiff need not route his constitutional challenge through the NLRB, as this Court has subject-matter jurisdiction to hear his claim.

B.   Merits

Having dealt with the threshold issue of subject-matter jurisdiction under Rule 12(b)(1), the next issue is whether plaintiff's Amended Complaint fails to state a claim under Rule 12(b)(6). Defendants argue that plaintiff's claim is "fatally flawed" because "[u]nder *Collins v. Yellen*, 594 U.S. 220 (2021)," plaintiff has failed to show "that the allegedly unlawful removal restrictions actually 'cause[d] harm' to him." Defs.' MTD at 17 (quoting *Collins*, 594 U.S. at 220). Plaintiff counters that the *Collins* harm requirement does not apply here, as he only seeks declaratory relief. Pl.'s Reply at 8. Unfortunately for plaintiff, defendants are correct and this case must be dismissed.

In *Collins*, the Supreme Court held that a statutory for-cause removal restriction protecting the Directors of the Federal Housing Finance Agency ("FHFA") violated the separation of powers. 594 U.S. at 228, 256–57. Despite finding the removal restriction unconstitutional, the Supreme Court questioned what relief, if any, it could provide. *See id.* at 257–60. The Supreme Court reasoned that if the Directors were properly appointed, there was no reason to automatically void all of their actions unless the plaintiffs were harmed by the Directors remaining in place. *See id.* at 257–58. As the Supreme Court explained:

> Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.

*Id.*

The Supreme Court thus concluded that to unwind the unconstitutionally protected Directors' actions, the plaintiffs needed to show harm. Here, the Supreme Court provided a few examples, which together suggest that a plaintiff must allege some failed effort by the President to remove an improperly protected official:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 259–60.

It was not enough for the *Collins* plaintiffs to argue that were it not for the removal protections, "the President *might have* replaced one of the confirmed Directors who supervised the" relevant conduct, "or a confirmed Director *might have* altered his behavior in a way that would have benefited the shareholders." *Id.* at 260 (emphases added). The Supreme Court thus remanded the case to the lower courts to determine whether the plaintiffs had alleged sufficient harm. *Id.*[3]

Plaintiff here has not met the *Collins* harm requirement. There is no allegation that the removal restrictions have thwarted the President from removing NLRB ALJs. Instead, plaintiff asserts the harm is simply being "subject[] . . . to unconstitutional agency authority," "a 'here-and-now' injury traceable to the structure of the NLRB and ALJ removal restrictions." Am. Compl. ¶ 57. That is not sufficient under *Collins*. Plaintiff has not alleged "that the President had attempted to remove [an NLRB ALJ] but was prevented from doing so" or "that the President had made a public statement expressing displeasure with actions taken by" an NLRB ALJ. *See Collins*, 594 U.S. at 259–60. Therefore, the Court cannot conclude that any NLRB ALJ before whom plaintiff would appear is improperly in his or her position. This dooms plaintiff's separation of powers claim.

---

[3] This harm requirement is separate from the injury required to establish standing. *See Collins*, 594 U.S. at 258 n.24 ("What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction. We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action that was taken by such an officer and that the plaintiff alleges was void. But that holding on standing does not mean that actions taken by such an officer are void *ab initio* and must be undone." (citations omitted)). Instead, the *Collins* harm requirement is an element of a separation of powers challenge to removal protections. *See Cortes v. NLRB*, 2024 U.S. Dist. LEXIS 65196, at *16 (D.D.C. Apr. 10, 2024) (Boasberg, J.) ("The better way to understand this requirement, . . . is as one element that plaintiffs must show to make out their constitutional claim against the Board Members' removal protections."); *accord Avila*, 2025 U.S. Dist. LEXIS 50507, at *21–22.

Plaintiff urges the Court to distinguish his case from *Collins* because of the relief sought. *Collins* dealt only with a request for retrospective relief and, according to plaintiff, does not mandate a showing of harm in cases seeking only declaratory relief. Pl.'s MSJ Mem. at 21–26; *see Collins*, 594 U.S. at 257 ("[B]ecause the shareholders no longer have a live claim for prospective relief, the only remaining remedial question concerns retrospective relief." (citation omitted)).[4]

This proposed distinction between types of relief sought has been repeatedly rejected by courts considering whether plaintiffs need to show harm to succeed in removal protections cases. *See Cortes v. NLRB*, 2024 U.S. Dist. LEXIS 65196, at *17–18 (D.D.C. Apr. 10, 2024) ("As every court of appeals that has dealt with this claim has recognized, . . . the Court's reasoning in Collins 'applies with equal force regardless of the relief sought.'" (citation omitted)); *Avila*, 2025 U.S. Dist. LEXIS 50507, at *22 (rejecting the argument that "*Collins* does not bar declaratory relief in separation-of-powers challenges"); *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180–81 (2d Cir. 2023) ("[T]he Supreme Court's reasoning that an officer's actions are valid so long as she was validly appointed applies with equal force regardless of the relief sought by the party challenging the officer's actions."); *Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*Collins* did not rest on a distinction between prospective and

---

[4] The Amended Complaint does seek preliminary injunctive relief, but plaintiff has not filed a motion for a preliminary injunction because he does not have a hearing scheduled before an ALJ. *See* Am. Compl. at 14 (Request for Relief). Plaintiff explains that should a hearing be scheduled, he would move for a preliminary injunction to pause said hearing until he "secures a declaration that the ALJ's removal protections are unconstitutional." *Id.* ¶ 9; *see also* Pl.'s Status Report. As such, plaintiff currently seeks only declaratory relief, not injunctive relief.

retrospective relief."), *rev'd on other grounds*, 601 U.S. 416 (2023); *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022) ("The *Collins* inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief . . . ."), *rev'd on other grounds*, 598 U.S. 623 (2023); *but see VHS Acquisition Subsidiary No. 7 v. NLRB*, 759 F. Supp. 3d 88, 100 (D.D.C. 2024) ("While the NLRB argues that [the plaintiff] must show tangible harm traceable to the removal restrictions to be entitled to relief, that requirement does not logically extend to declaratory relief.").

      I find that the *Collins* harm requirement applies equally to claims for declaratory relief as it does to claims for retrospective relief. *Collins* reflects a concern about treating a properly appointed official as being improperly in his or her position when there is no evidence that the President sought to remove that official. *See* 594 U.S. at 258 n.24 (declining to find that all actions taken by an officer improperly protected "are void *ab initio* and must be undone"). This concern applies regardless of whether a plaintiff has already appeared before an ALJ, or whether he or she will appear before an ALJ in the future. If this Court could not retroactively unwind an ALJ's decision absent a showing that the President sought to remove the ALJ, it is unclear why the Court could preemptively prevent the ALJ from reaching that decision absent the same showing of harm. Creating this type of two-tracked analysis would encourage lopsided results: It would require a plaintiff to show harm to undo one action but would allow a plaintiff to prevent all future action without having to show harm.

I therefore conclude that plaintiff was required to show that the removal restrictions caused him harm, and that he failed to do so. This harm element is indispensable. As such, plaintiff's Amended Complaint must be dismissed.[5] Dismissal will be without prejudice, as plaintiff may be able to amend his pleadings to establish the requisite harm. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("A dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." (cleaned up)).

## IV. CONCLUSION

For the reasons set forth above, I will **GRANT** defendants' motion to dismiss and dismiss the Amended Complaint without prejudice. I will also **DENY AS MOOT** plaintiff's motion for summary judgment. An Order consistent with the above accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[5] I will not delve any further into the merits of plaintiff's separation of powers claim. Deciding this nettlesome constitutional issue when the Court knows that it cannot offer even declaratory relief would contravene the "longstanding principle of judicial restraint [which] requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)); *see also Cortes*, 2024 U.S. Dist. LEXIS 65196, at *19–20 (declining to determine the constitutionality of removal protections before addressing the harm requirement because "if it is not necessary to decide more, it is necessary not to decide more" (quoting *PDK Lab'ys Inc. v. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004))); *K & R Contrs., LLC v. Keene*, 86 F.4th 135, 148–49 (4th Cir. 2023) ("[R]egardless of how we answer the constitutional question presented by the removal provisions, we would be required to deny the petition because K & R has not asserted any harm resulting from the allegedly unconstitutional statutes . . . . Consequently, we are constrained to avoid resolving that constitutional question in this case.").